UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

ERNEST A. ROBERGE,                  )
                                    )
        Plaintiff                   )
                                    )
v.                                  )    No. 2:13-cv-289-GZS
                                    )
CAROLYN W. COLVIN,                  )
Acting Commissioner of Social Security, )
                                    )
        Defendant                   )

## REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks reversal and remand, contending that the administrative law judge failed to obtain the assistance of a medical expert at hearing to interpret raw medical data, namely, two 2012 MRI reports, and improperly rejected the residual functional capacity ("RFC") opinion of treating physician David Galbraith, M.D. *See* Plaintiff's Statement of Errors ("Statement of Errors") (ECF No. 13) at 7-16. I find no error and, accordingly, recommend that the court affirm the decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on June 13, 2014, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

administrative law judge found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through June 30, 2012, Finding 1, Record at 16; that he had severe impairments of degenerative disc disease of the cervical spine, status-post an anterior cervical discectomy and fusion of C5-6, and right shoulder impingement syndrome, Finding 3, *id.*; that he retained the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that he could lift and/or carry up to a maximum of 10 pounds frequently, stand and/or walk for about six hours in an eight-hour workday, sit for about six hours in an eight-hour workday, push, pull, or pedal within the weight tolerances for lifting and/or carrying, occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, never climb ladders, ropes, or scaffolds, avoid overhead work, and avoid vibration, hazardous machinery, or unprotected heights, Finding 5, *id.* at 19; that, considering his age (43 years old, defined as a younger individual, on his alleged disability onset date, March 1, 2008), education (at least high school), work experience (transferable skills), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id.* at 24; and that he, therefore, was not disabled from March 1, 2008, through the date of the decision, June 11, 2012, Finding 11, *id.* at 25. The Appeals Council declined to review the decision, *id.* at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as

adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen*, 482 U.S. at 146 n.5; *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. 2012 MRI Reports

The plaintiff sought treatment in 2008 for worsening of chronic neck and shoulder pain stemming from a fall from a height of 18 feet approximately 17 years earlier in which he fractured several ribs and his right distal clavicle and injured his neck and right shoulder. *See* Record at 330, 374. On October 1, 2009, following a series of medical visits and diagnostic tests, he underwent an anterior cervical decompression and fusion of his C5-6 vertebrae. *See id.* at 392-93.

Agency nonexamining consultant Robert Hayes, D.O., completed two RFC assessments, one prior to the plaintiff's fusion surgery, dated August 5, 2009, and one afterward, dated August 27, 2010. *See id.* at 425-33, 478-86. As of August 5, 2009, Dr. Hayes found the plaintiff capable of lifting 20 pounds occasionally and 10 pounds frequently, standing and/or walking with normal breaks for about six hours in an eight-hour workday, and sitting with normal breaks for about six hours in an eight-hour workday. *See id.* at 479. He indicated that the plaintiff could only occasionally climb ramps or stairs, could never climb ladders, ropes, or scaffolds, and

could only occasionally crawl. *See id*. at 480. He stated that the plaintiff should avoid vibratory tools and hazards requiring good bimanual dexterity. *See id*. at 482. He explained that some limits due to known cervical spine and right shoulder problems were credible. *See id*. at 483.

As of August 27, 2010, Dr. Hayes found no change in the plaintiff's ability to stand, walk, sit, climb, or crawl, but deemed him capable of lifting only 10 pounds (either occasionally or frequently) and stooping, kneeling, and crouching only occasionally. *See id*. at 426-27. He stated that the plaintiff needed to avoid vibratory tools, tasks, and environments, hazardous machines, and unprotected heights. *See id*. at 429. He explained that some limits due to cervical disc disease and, to a lesser extent, carpal tunnel syndrome, were credible. *See id*. at 430. On January 14, 2011, a second agency nonexamining consultant, Antonio Medina, M.D., concurred with that opinion. *See id.* at 435.

For purposes of his 2010 RFC opinion, Dr. Hayes had the benefit of review of a July 20, 2010, report by agency examining consultant Robert Klotz, P.A., countersigned by Robert Stockwell, D.O., which stated, in relevant part:

> It appears that the [plaintiff's] process with regard to his neck and upper extremity complaints is ongoing. More precision could be obtained through the testing currently planned by Dr. Christiansen [sic]. My comments below relate to current findings, which certainly would be amended by his assessment and appropriate treatment.
>
> ∗∗∗
>
> Pending that further assessment, I would currently restrict [the plaintiff] to no more than 15 pounds lift, carry, push and pull on an occasional basis. I would currently restrict him to no more than two of the following positions: sitting, standing, walking. I would also restrict him posturally with no bending, climbing, balancing, stooping, kneeling, crouching and crawling. There is no obvious restriction of his fine or gross motor function or his ability to hear or speak.

*Id*. at 422; *see also id*. at 433.[2]

On December 21, 2011, the plaintiff underwent cervical spine imaging that revealed "[s]atisfactory postoperative appearance without pathologic subluxation[,]" and on January 2, 2012, a cervical spine MRI revealed:

> Anterior cervical fusion C5/6 with moderate neural foraminal stenosis C5/6 on the right due to osteophyte. Asymmetrical disc and osteophyte complex on the right at C3/4 but this does not appear to result in significant neural foraminal encroachment.

*Id*. at 521-23.

By letter dated January 11, 2012, F. Alan Hull, PA-C, of Maine Medical Partners Neurosurgery & Spine, wrote to the plaintiff:

> I have had a chance to review your MRI that was done on 1/2/2012. I am pleased to be able to tell you that the fusion looks good. There do not appear to be any pinched nerves at any level.
>
> As we discussed at your visit, this confirms that the majority of your pain is likely directly related to the shoulder itself. There may also be a component of tightness in the brachial plexus giving you a feeling of numbness.
>
> At this point, you do not need any further surgery or injections on your neck. Seeing an orthopedist for your shoulder is a good option. You and your primary care provider could also consider moving directly to physical therapy.

*Id*. at 520.

On February 14, 2012, the plaintiff underwent a right shoulder MRI, which revealed "[d]eficiency at the posterior inferior glenoid likely relating to underlying dysplasia." *Id*. at 490.

---

[2] The plaintiff saw Marc D. Christensen, M.D., Ph.D., of New England Spine on January 15, 2010, complaining of postoperative bilateral neck and shoulder pain and that he was dropping things. *See* Record at 406. Dr. Christensen stated: "The [plaintiff] objectively appears to be okay. Subjectively he has complaints, which I cannot explain. I did say I would send him to receive an EMG to rule out any continued or progressive electrophysiologic abnormalities. I told him [that in] the absence of that[,] there is probably nothing I can do." *Id*. at 407. On January 21, 2010, the plaintiff underwent electrodiagnostic testing by Dayton F. Haigney, M.D. *See id*. at 410-11. Dr. Haigney found evidence of bilateral carpal tunnel, mild, left greater than right, without active denervation, but no evidence for cervical radiculopathy or brachial plexopathy. *See id*. at 411. The administrative law judge did not find a severe carpal tunnel impairment, *see id*. at 17, and the plaintiff does not challenge that finding, *see generally* Statement of Errors.

5

The physician reviewing the MRI stated that, given the plaintiff's history, he "would not exclude that this relates to remote trauma[,]" but he did not, "however, see evidence of labral tear." *Id*. On February 17, 2012, the plaintiff was seen by orthopedic specialist John W. Solari, M.D., who stated:

> Shoulder exam relatively benign. MRI does not reveal major pathology, therefore, I do not think his primary problem is shoulder based. I believe it is neurologic and possibly referred form his neck. Could potentially be suprascapular nerve pathology. However, at this point, I think it is most appropriate that he is worked up by the neurosurgeons and neurologists and if they can define specific pathology with the suprascapular nerve or any other shoulder-based pathology, we would be glad to reevaluate but I have nothing further to offer.

*Id.* at 487.

The plaintiff's treating primary care physician, David Galbraith, M.D., submitted an RFC opinion dated May 9, 2012, in which he stated, *inter alia*, that the plaintiff (i) probably could not consistently complete a normal workday and workweek without interruptions from physically based symptoms, (ii) was restricted to part-time work not to exceed two hours per shift, six hours per week, (iii) was limited to less than sedentary work in that he was unable to tolerate the prolonged standing or sitting needed for either light or sedentary work on a regular and sustained basis, and (iv) had extreme restriction of activities of daily living. *See id*. at 531-32, 534. Dr. Galbraith checked a box indicating that the plaintiff's functional limitations as described likely had persisted since March 1, 2008. *See id*. at 534.

The administrative law judge summarized Hull's findings that "recent imaging revealed a good fusion with no evidence of any nerve involvement" and that, "given the objective medical findings, the majority of the [plaintiff's] pain [was] likely related to his right shoulder[.]" *Id.* at 22. He gave significant weight to Dr. Hayes' 2010 RFC opinion and Dr. Medina's concurring opinion, little weight to Dr. Hayes' 2009 RFC opinion in view of subsequent medical evidence,

6

some weight to the Klotz opinion that the plaintiff should not lift, carry, push, or pull more than 15 pounds, and little weight to the portions of his opinion limiting the plaintiff to standing, walking, or sitting for no more than two hours each and prohibiting bending, climbing, balancing, stooping, kneeling, crouching, or crawling. *See id*. at 23. He stated that Klotz had based his opinion on a single medical examination and that the longitudinal treatment record and the plaintiff's functional activities of daily living were inconsistent with those limitations. *See id*.

For reasons discussed below, he gave no weight to the Galbraith RFC opinion. *See id*.

The plaintiff complains that, in reaching these conclusions, the administrative law judge impermissibly interpreted the two 2012 MRI results without medical expert assistance. *See* Statement of Errors at 7-9; *see also, e.g., Gordils v. Secretary of Health & Human Servs.,* 921 F.2d 327, 329 (1st Cir.1990) (Although an administrative law judge is not precluded from "rendering common-sense judgments about functional capacity based on medical findings," he "is not qualified to assess residual functional capacity based on a bare medical record."). He argues that the MRI reports appeared to provide objective medical evidence supporting his ongoing complaints of chronic, severe neck and right shoulder pain, and that the only two providers who assessed the right shoulder MRI report, Hull and Dr. Solari, disagreed in their interpretation, with Hull stating that he believed the majority of the plaintiff's pain was attributable to the shoulder, and Dr. Solari stating that he believed the problem was not shoulder-based. *See id*. at 8. He adds that neither Hull nor Dr. Solari stated that he disbelieved the plaintiff's chronic pain complaints, and both clearly were seeking explanations for them. *See id*. at 8-9.

7

However, as the commissioner contends, the administrative law judge did not arrive at an RFC finding based on interpretation of raw medical evidence. *See* Defendant's Opposition to Plaintiff's Itemized Statement of Specific Errors ("Opposition") (ECF No. 17) at 3-4. Instead, he implicitly found that the two 2012 MRI results did not undermine his reliance on Dr. Hayes' 2010 RFC opinion, as endorsed by Dr. Medina. As the commissioner points out, *see id*. at 5 & n.1, Hull and Dr. Solari did not arrive at clashing interpretations of the right shoulder MRI report. Instead, Hull concluded, based on what he construed as a relatively benign cervical MRI report, that the plaintiff's shoulder likely was the source of his pain, and Dr. Solari concluded, based on what he construed as a relatively benign shoulder MRI report, that the plaintiff's neck likely was the source of his pain. *See* Record at 487, 520. Thus, neither treating source found, based on assessment of the MRI result within his specialty, that there was an objective basis for the plaintiff's pain complaints. Based on these expert assessments, the administrative law judge, as a layperson, supportably could conclude that the 2012 MRI results did not provide objective evidence in support of greater restrictions than assessed by Drs. Hayes and Medina in 2010. He committed no error in failing to obtain the services of a medical expert at hearing to interpret those results.[3]

### B. Handling of Galbraith RFC Opinion

The plaintiff next argues that the administrative law judge erred in attributing no weight to the Galbraith RFC opinion. *See* Statement of Errors at 9-16. I find no error.

A treating source's opinion on the nature and severity of a claimant's impairments is entitled to controlling weight if it is "well-supported by medically acceptable clinical and

---

[3] At oral argument, the plaintiff's counsel acknowledged that Hull and Dr. Solari reviewed different MRI reports. However, he argued that there remained an inconsistency in that Hull attributed the plaintiff's pain to his shoulder and Dr. Solari to his neck, and that the MRI reports provide objective evidence buttressing the plaintiff's pain complaints. For the reasons discussed above, this argument is unpersuasive.

laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the claimant's] case record[.]" 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). However, the question of a claimant's RFC is among issues reserved to the commissioner, with respect to which even the opinion of a treating source is entitled to no "special significance" and cannot be assigned controlling weight. *Id.* §§ 404.1527(d)(2)-(3), 416.927(d)(2)-(3); Social Security Ruling 96–2p, reprinted in *West's Social Security Reporting Service* Rulings 1983–1991 (Supp. 2013) ("SSR 96–2p"), at 112.

When a treating source's opinion is not given controlling weight, it is weighed in accordance with enumerated factors. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).[4] An administrative law judge may give the opinion little weight or reject it, provided that he or she supplies "good reasons" for so doing. *See, e.g., id.* ("[The commissioner] will always give good reasons in [her] notice of determination or decision for the weight [she] give[s] [a claimant's] treating source's opinion."); Social Security Ruling 96–5p, reprinted in *West's Social Security Reporting Service* Rulings 1983–1991 (Supp. 2013) ("SSR 96–5p"), at 127 (even as to issues reserved to the commissioner, "the notice of the determination or decision must explain the consideration given to the treating source's opinion(s)"); Social Security Ruling 96–8p, reprinted in *West's Social Security Reporting Service* Rulings 1983–1991 (Supp. 2013) ("SSR 96–8p"), at 150 (an administrative law judge can reject a treating source's opinion as to RFC but "must explain why the opinion was not adopted"). Slavish discussion of the relevant factors is not

---

[4] These are: (i) examining relationship, (ii) treatment relationship, including length of the treatment relationship, frequency of examination, and nature and extent of the treatment relationship, (iii) supportability – *i.e.,* adequacy of explanation for the opinion, (iv) consistency with the record as a whole, (v) specialization – *i.e.*, whether the opinion relates to the source's specialty, and (vi) other factors highlighted by the claimant or others. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).

9

required.  *See, e.g., Golfieri v. Barnhart,* No. 06–14–B–W, 2006 WL 3531624, at *4 (D. Me. Dec. 6, 2006) (rec. dec., *aff'd* Dec. 29, 2006).

The administrative law judge explained his handling of the Galbraith RFC opinion as follows:

> Dr. Galbraith has only treated the [plaintiff] for approximately 16 months and would not know [his] limitations as of the alleged onset date.  In any event, Dr. Galbraith's assessment is significantly more restrictive than the objective medical findings suggest.  For example, Dr. Galbraith's assessment, that the [plaintiff] will miss 5 or more days of work during a typical month and is restricted to significantly less than part-time work not to exceed 2 hours per shift for a total of 6 hours per week, is wholly inconsistent with the objective medical findings, including Dr. Galbraith's own treatment notes.  His opinion is also inconsistent with his recommendation that the [plaintiff] pursue functional strengthening of his shoulder, and the [plaintiff's] reported level of daily activity, including his report to Dr. Galbraith of using a car jack.

*Id*. at 23 (citations omitted).

The administrative law judge had noted, earlier in his decision, that the record included (i) the plaintiff's April 2009 report to treating providers that he was manhandling and pulling tires and using a chainsaw, (ii) reports during the spring and summer of 2009 that he was stripping and applying roofing on a daily basis and cutting wood, (iii) a report that, as recently as the summer of 2011, he was using a car jack, and (iv) a report that, in the fall of 2011, he was using a chainsaw.  *See id*. at 18.  The administrative law judge observed, in the context of discrediting the plaintiff's subjective reports of disabling pain: "[A]s recently as the summer of 2011, the [plaintiff] is using a car jack, and in the fall of 2011, he is using a chainsaw.  This is wholly inconsistent with the concept of disability."  *Id*. at 20 (citations omitted).

The plaintiff takes issue with each of the administrative law judge's bases for discrediting the Galbraith opinion, contending that:

1. His reported activities were not inconsistent with his claim of disabling right-shoulder and neck pain since March 1, 2008, given that (i) most occurred well before his October 1, 2009, surgery, (ii) the report regarding his chainsaw use in 2011 shed no light on the manner in which he used that tool, (iii) while using the chainsaw in 2011, he suffered an injury to his leg that he testified was due to his lack of right arm strength and speed, and (iv) with one possible exception, all of the activities exacerbated his neck/shoulder symptoms, consistent with his wife's testimony at hearing that he tended to push himself past his limits even though he knew it would not go well. *See* Statement of Errors at 11-12. The "concept of disability" does not require that a claimant not engage in certain normal daily activities. *See id*. at 13-14.[5]

2. Dr. Galbraith's RFC opinion was not inconsistent with his findings on examination, which included moderate tenderness over the spine, moderate right paraspinal spasm at the cervical spine, a tender trapezius with focal areas spastic, right greater than left, and shoulder tenderness to resisted flexion. *See id*. at 14. It is also was supported by the Klotz opinion. *See id*. at 15.

3. The administrative law judge erred in discounting the opinion in part on the basis that Dr. Galbraith did not begin treating the plaintiff until three years after his alleged onset date of disability, given Dr. Galbraith's reliance on objective diagnostic evidence from the earlier period, including MRI studies. *See id*. at 15-16.

Nonetheless, the plaintiff falls short of demonstrating that the administrative law judge failed to supply good reasons for discrediting the Galbraith RFC opinion. As the commissioner

---

[5] The plaintiff points out, *see* Statement of Errors at 11, that, while a July 10, 2009, Goodall Pain Clinic note indicated that he had injured his right shoulder pulling tires approximately three months earlier, *see* Record at 364, MRI imaging performed at about that time was "significant for severe foraminal narrowing at C5-6 on the right side, less severe on the left[,]" which "well correlates with [his] pain[,]" *id*. at 356. As the commissioner notes, *see* Opposition at 9-10, while this finding provided an objective basis for the plaintiff's pain, it did not address the question of the extent of his functional restrictions. Moreover, in crafting his 2010 RFC opinion, Dr. Hayes took this MRI finding into account. *See* Record at 432.

11

underscores, *see* Opposition at 9-11, the plaintiff engaged in strenuous activities both before and after his surgery that require a significantly greater work capacity than the less than sedentary capacity assessed by Dr. Galbraith. As the commissioner notes, *see id*. at 9, there is evidence that the plaintiff performed some of these activities on a sustained basis, for example, roofing, without seeking medical assistance for an exacerbation each time the work was performed, *see, e.g*., Record at 336, 338. In any event, as the commissioner's counsel contended at oral argument, even accepting that the plaintiff pushed himself past his capabilities, thereby causing neck/shoulder pain exacerbations and leading to his chainsaw injury, the administrative law judge found him capable of performing light, not medium or heavy, work on a regular basis. *See* Finding 5, *id*. at 19.

The plaintiff cites caselaw for the proposition that a claimant's ability to engage in activities such as cooking, cleaning, doing laundry, and visiting friends is not necessarily inconsistent with a finding of disability, and does not constitute substantial evidence of ability to engage in substantial gainful activity, *see* Statement of Errors at 13-14 (citing, *inter alia*, *Payton v. Shalala*, 25 F.3d 684, 687 n.6 (8th Cir. 1994); *Harris v. Secretary of Dep't of Health & Human Servs*., 959 F.2d 723, 726 (8th Cir. 1992)), but it is distinguishable. The plaintiff was not merely engaging in normal household daily activities such as cooking and cleaning but, rather, undertaking such strenuous activities as roofing, manhandling tires, and using a chainsaw.

Moreover, the administrative law judge did not rely on those activities as evidence of the plaintiff's ability to engage in work requiring such capacities on a sustained basis but, rather, as a factor in choosing to credit the 2010 Hayes opinion that the plaintiff was capable of light work, with modifications, over that of Dr. Galbraith that he was capable of less than sedentary work. "While a claimant's activities of daily living, standing alone, do not constitute substantial

evidence of a capacity to undertake full-time remunerative employment, an administrative law judge properly may take such activities into consideration in assessing the credibility of a claimant's allegations and in resolving conflicts in the evidence with respect to medical experts' and treating providers' opinions of a claimant's capabilities." *Anderson v. Astrue*, No. 1:11-cv-109-DBH, 2012 WL 283018, at *5 (D. Me. Jan. 30, 2012) (rec. dec., *aff'd* Feb. 17, 2012) (citations omitted).

The administrative law judge also properly found Dr. Galbraith's objective findings inconsistent with his RFC opinion. He cited not only Dr. Galbraith's moderate findings on examination, but also Dr. Galbraith's recommendation that the plaintiff take a functional approach by gradually increasing rotator cuff strengthening and increasing his activity level to help balance muscle groups. *See* Record at 22-23; *see also, e.g., id*. at 504. The plaintiff does not elaborate on why, in his view, the Klotz opinion supports the Galbraith opinion, *see* Statement of Errors at 15; however, to the extent that it does, the administrative law judge explained why he chose to give less weight to certain portions of the Klotz statement, *see* Record at 23.[6] Moreover, Dr. Hayes took the Klotz report into account in concluding in 2010 that the plaintiff could perform light work, with some additional restrictions. *See id*. at 433.

Finally, the administrative law judge supportably discounted the Galbraith opinion in part on the basis that Dr. Galbraith had only been treating the plaintiff for 16 months and would not know his limitations as of his alleged onset date of disability. *See id*. at 23. As counsel for the commissioner notes, *see* Opposition at 15, the length of a treatment relationship is among the enumerated factors to be considered in assessing treating source opinions, *see* 20 C.F.R.

---

[6] At oral argument, the plaintiff's counsel contended that there was no inconsistency between Dr. Galbraith's moderate findings on examination and his RFC opinion, asserting that "moderate" is a medical term. He cited no authority for that proposition.

§§ 404.1527(c)(2)(i), 416.927(c)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion."). Even accepting that Dr. Galbraith reviewed prior diagnostic studies, he had no personal knowledge of the plaintiff's condition prior to the time he began treating him.

The administrative law judge, hence, rejected the Galbraith opinion for the requisite good reason(s).

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 28th day of June, 2014.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge